## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LOURI PAYNE,<br>o/b/o L.K.P., a minor | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 11-CV-793-PJC |
| MICHAEL J. ASTRUE,<br>Commissioner, Social Security Administration, | ) ) ) | |
| Defendant. | ) | |

## ORDER AND OPINION

Louri Payne ("Payne") on behalf of her minor son, L.K.P. ("Claimant"), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Claimant's application for disability benefits under the Social Security Act, 42 U.S.C. §§ 401 *et seq*. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, the Court **REVERSES AND REMANDS** the Commissioner's decision.

**Claimant's Background**

Claimant was 10 years old at the time of the hearing before the ALJ on April 15, 2011, and he was in the fourth grade.  (R. 35-36).  Payne testified that Claimant looked at comic books and liked them, but it was unclear if he actually read the words.  (R. 37-38).  Payne did not write in cursive, except for his name.  *Id.*  He needed assistance to be able to look things up in a dictionary.  (R. 38-39).  Payne testified that Claimant had problems in math and was "totally lost" now that his class was doing division.  (R. 39).  She said that Claimant could identify coins, but he couldn't count money.  (R. 39-40).

Payne testified that she had to structure Claimant's environment and routine for every-day activities such as getting ready for school.  (R. 40-41).  She described that she had to give Claimant instructions for every individual aspect of getting ready.  *Id.*  She gave an example that if she asked him to pick out his own clothes to wear to school, Claimant would select clothes that he had already worn and that were dirty.  (R. 41-42).  She would have to give him instructions about his personal hygiene, such as telling him to blow his nose or wipe his mouth.  (R. 42-43).  Claimant at times defecated in his pants.  (R. 47-48).  He also left messes when he used the bathroom.  (R. 48).

Payne lived in the same house with her three-year-old grandson, and she testified that Claimant was aggressive and hostile with her grandson.  (R. 43-44).  She said that he constantly picked up the grandson and dropped him.  *Id.*  Payne once saw Claimant kick a one-year-old baby at a playground, and he showed no remorse that the baby was injured.  (R. 44).  In another incident, at a restaurant, Claimant was running and almost knocked down an elderly lady, and he acted as though he hadn't seen her.  *Id.*  He did not pay attention when Payne tried to explain to him what he had done.  *Id.*

2

Payne testified that Claimant did not have friends, and that he preferred to play with younger children.  (R. 45, 49-50).  Payne testified that younger children and even animals would stay away from Claimant because they knew not to come near him.  (R. 49-50).  She said that Claimant's teachers described him as aggressive at school.  (R. 45).  She said that he was also bullied by other children.  (R. 46).  Claimant had been sexually molested by an older sibling.  (R. 50).

Claimant would not follow instructions either at home or at school unless Payne or the teacher was in close proximity to give constant reminders and prodding.  (R. 46-47).  At times, he would refuse to do something when instructed.  (R. 48).  Payne testified that Claimant constantly told lies, and he stole items from stores.  (R. 48-49).  Payne felt that this behavior was escalating, and he was stealing more things.  *Id.*

Payne testified that Claimant had been diagnosed as having ADHD,[1] and he was taking Focalin.  (R. 50-51).

Claimant was evaluated by agency consultant Denise LaGrand, Psy.D. on April 15, 2009. (R. 194-97).  While Dr. LaGrand reported that Claimant was cooperative and alert, she also noted that "he occasionally would lose focus, and stare blankly to the upper left. . . . This appeared to be more than just lack of attention."  (R. 196).  Dr. LaGrand suggested that Payne discuss the possibility of petit mal seizures with a physician.  *Id.*  On an intelligence test, Claimant's overall cognitive functioning was in the low average range.  *Id.*  Dr. LaGrand noted that Claimant's processing speed score was significantly lower than his IQ and that this indicated that he needed

---

[1]     Attention-Deficit/Hyperactivity Disorder.  See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 85-93 (Text Revision 4th ed. 2000) (hereinafter "DSM IV").

more time to successfully complete tasks.  *Id.*

A speech pathologist completed a questionnaire on April 17, 2009 that rated Claimant as below average in following oral instructions, comprehending classroom discussion, remembering information, and expressing himself adequately when called upon.  (R. 198-99).

The record includes an Individualized Education Program ("IEP") from Union Public Schools for Claimant dated April 21, 2009.  (R. 268-76).

Deborah McGraw, Ph.D. saw Claimant for an initial evaluation on May 8, 2009.  (R. 221-27, 249).  At that time, her diagnosis was disruptive behavior disorder, not otherwise specified.  (R. 249).  Dr. McGraw wrote a referral to a physician's assistant, Sarah Aafedt, on September 23, 2009 asking her for a medication consultation for Claimant.  (R. 212-13).  Dr. McGraw said that Claimant was struggling academically and testing that Dr. McGraw had done showed scores in the low average to extremely low range.  (R. 212).  Results of questionnaires from Payne and teachers were consistent with a diagnosis of ADHD.  (R. 213).

A special education teacher completed a Teacher Questionnaire form on January 22, 2010.  (R. 200-07).  In the domain of acquiring and using information, she rated Claimant as having a serious problem with five activities, an obvious problem with three, and a slight problem with two.  (R. 201).  In the domain of attending and completing tasks, she rated Claimant as having a serious problem with nine activities, an obvious problem with three, and a slight problem with one, and she rated the frequency of these problems as daily.  (R. 202).  In the domain of interacting and relating with others, she assessed Claimant as having a serious problem with four activities, an obvious problem with six, and a slight problem with three, and she again rated the frequency of these problems as daily.  (R. 203).  She found no problem in the domain of moving about and manipulating objects.  (R. 204).  In the domain of caring for

4

himself, the teacher assessed Claimant as having an obvious problem with four activities and a slight problem with six, and she rated the frequency as daily.  (R. 205).

On January 22, 2010, a speech pathologist again completed a questionnaire that rated Claimant as below average in following oral instructions, comprehending classroom discussion, remembering information, and expressing himself adequately when called upon.  (R. 260-61).

Dr. McGraw completed a Mental Status Form for Children on February 3, 2010.  (R. 208).  She stated that Claimant was shy but warmed up over time.  *Id.*  She stated that Claimant's behavior was within normal limits on medication.  *Id.*  She said that Claimant attended school, had friends, and functioned well.  *Id.*  She recommended that he continue with psychiatric care and counseling to improve his social skills.  *Id.*  She noted that he had learning problems in math and reading and that he complained that he had no friends at school.  *Id.*  Her diagnoses were ADHD (DSM 314.01) and adjustment disorder with depressed mood (DSM 309).[2]  *Id.*

Dr. McGraw continued to see Claimant for counseling from May 2009 through March 2011.  (R. 208-49, 257-59, 304-11).

Nonexamining consultant Carolyn Goodrich, Ph.D. completed a Childhood Disability Evaluation Form on February 8, 2010.  (R. 251-56).  Dr. Goodrich concluded that Claimant's impairment was severe, but did not meet or equal the listings.  (R. 251).  In the domain of acquiring and using information, Dr. Goodrich found a less than marked limitation.  (R. 253).  In her narrative explanation, Dr. Goodrich summarized the report of Dr. LaGrand and referred to the April 17, 2009 form completed by the speech therapist and a Teacher Questionnaire dated

---

[2]     Dr. McGraw indicated these diagnoses by using the DSM codes.  See DSM IV at 85-93, 679-80.

April 8, 2009.[3]  *Id.*  In the domain of attending and completing tasks, Dr. Goodrich again found a

less than marked limitation.  *Id.*  In her narrative explanation, Dr. Goodrich referred to the April

9, 2009 Teacher Questionnaire and to Dr. LaGrand's report.  *Id.*  In the domain of interacting and

relating with others, Dr. Goodrich found a less than marked limitation, and she referred to the

April 8, 2009 Teacher Questionnaire in her narrative remarks.  *Id.*  Dr. Goodrich found no

limitation in the domains of moving about and manipulating objects, caring for himself, and

health and physical well-being.  (R. 254).

Treatment notes show that Claimant saw Sarah Aafedt, PA, from March 25, 2010 to

October 28, 2010.  (R. 290-303).  On March 25, 2010, Aafedt's primary diagnosis for Claimant

was posttraumatic stress disorder ("PTSD"), and a second diagnosis of ADHD.  (R. 290).  She

continued a prescription of Zoloft and prescribed a trial to resume Focalin XR.  *Id.*

Nonexamining consultant Sharon Taber, Ph.D. completed a second Childhood Disability

Evaluation Form on May 19, 2010.  (R. 277-82).  Dr. Taber concluded that Claimant's

impairment was severe, but did not meet or equal the listings.  (R. 277).  In the domain of

acquiring and using information, Dr. Taber found a less than marked limitation.  (R. 279).  In her

narrative explanation, Dr. Taber summarized the report of Dr. LaGrand and referred to the April

17, 2009  form completed by the speech therapist and to a Teacher Questionnaire dated April 8,

2009.  *Id.*  She also referred to Dr. McGraw's September 2009 intelligence testing.  *Id.*  In the

domain of attending and completing tasks, Dr. Taber again found a less than marked limitation.

---

[3]    Both Dr. Goodrich and Dr. Taber, whose report is discussed below, refer to a Teacher Questionnaire dated April 8 or 9, 2009.  (R. 253, 279).  The Court has not been able to locate a Teacher Questionnaire with either of those dates in the administrative transcript, and the ALJ did not mention any such questionnaire.  This possible discrepancy in the documents included in the record does not appear to affect the issues before this Court or their outcome.

*Id.*  In her narrative explanation, Dr. Taber referred to the April 9, 2009 Teacher Questionnaire and to Dr. LaGrand's report.  *Id.*  She also noted Dr. McGraw's February 2010 Mental Status Form and her April 2010 treatment notes stating that Claimant was doing well on medication.  *Id.*  In the domain of interacting and relating with others, Dr. Taber found a less than marked limitation, and she referred to the April 8, 2009 Teacher Questionnaire in her narrative remarks.  *Id.*  Dr. Taber found no limitation in the domain of moving about and manipulating objects.  (R. 280).  In the domain of caring for himself, Dr. Taber found a less than marked limitation, and she referred to the Teacher's Questionnaire.  *Id.*

Sarah D. Aafedt, certified physician's assistant, completed a form on September 24, 2010.  (R. 287-89).  In describing Claimant's impairments, Aafedt said that without medications he showed signs of ADHD and anxiety.  (R. 287).  She said that even on medications, Claimant was oppositional.  *Id.*  Her diagnoses were PTSD and ADHD.  *Id.*  In the domain of acquiring and using information, Aafedt assessed Claimant with a less than marked limitation.  *Id.*  In the domains of attending and completing tasks and interacting and relating with others, Aafedt assessed Claimant with a marked limitation.  (R. 288).  She said that there was no evidence that Claimant had any limitation in the domain of moving about and manipulating objects.  *Id.*  Aafedt assessed a marked limitation in the domain of caring for himself.  (R. 389).  She assessed a less than marked limitation in the domain of health and physical well being.  *Id.*

A Teacher Questionnaire form was completed by two classroom teachers on March 24, 2011.  (R. 181-88).  In the domain of acquiring and using information, the teachers rated Claimant as having a very serious problem for two activities, a serious problem for five, and an obvious problem for three.  (R. 182).  They wrote that Claimant often refused to participate in class work and he required nearly constant support.  *Id.*  In the domain of attending and

7

completing tasks, they rated a very serious problem for five activities, a serious problem for four, an obvious problem for two, and a slight problem for one.  (R. 183).  All of the endorsed problems were described as occurring at a frequency of daily or hourly.  *Id.*  The teachers wrote that Claimant did not complete tasks independently and needed constant support to complete tasks.  *Id.*  In the domain of interacting and relating with others, they rated a serious problem for five activities, an obvious problem for seven, and no problem in one.  (R. 184).  All of these problems were said to occur on a daily basis.  *Id.*  The teachers said that there were no problems in the domain of moving about and manipulating objects.  (R. 185).  In the domain of caring for himself, the teachers said that there was a very serious problem with handling frustration appropriately, a serious problem with three activities, a slight problem with one, and no problem with four.  (R. 186).  The teachers wrote that Claimant was easily and frequently frustrated and angered and that he often acted out with physical aggression.  *Id.*  In a space for additional comments, the teachers wrote that Claimant's behavior had deteriorated during the school year. (R. 188).  They said that Claimant was frequently physically aggressive with other students, and he "shut down" when adults attempted to talk to him about his problems or to correct him.  *Id.*

**Procedural History**

On December 10, 2009, Payne filed for supplemental security income benefits under Title XVI, 42 U.S.C. § 1381 *et seq.*, on behalf of Claimant.  (R. 116-18).  Claimant's application for benefits was denied in its entirety initially and on reconsideration.  (R. 59-62, 71-74).  A hearing before ALJ Charles Headrick was held April 15, 2011, in Tulsa, Oklahoma.  (R. 30-56).  By decision dated May 19, 2011, the ALJ found that Claimant was not disabled at any time since the date the application was filed.  (R. 15-25).  On October 26, 2011, the Appeals Council denied review of the ALJ's findings.  (R. 1-6).  Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. § 416.1481.

**Social Security Law and Standard of Review**

A child under eighteen years of age is "disabled" for the purposes of determining benefits if he has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I).  A three-step sequential process guides the Commissioner's determination of whether a child meets the disability criteria.  20 C.F.R. § 416.924(a).  The ALJ must determine (1) whether the child is engaged in "substantial gainful activity"; (2) whether the child's impairment or combination of impairments is severe; and, (3) if severe, whether the child's impairment "meets, medically equals, or functionally equals the listings" set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  20 C.F.R. § 416.924(a).

The third step requires an initial determination of whether the impairment meets the requirements of a listing by satisfying "all of the criteria of that listing, including any relevant

criteria in the introduction."[4]  20 C.F.R. § 416.925(c)(3).  Next, if the child's impairment fails to

meet the criteria, there must be a determination of whether it "medically equal[s] the criteria of a

listing."  20 C.F.R. § 416.925(c)(5).  An impairment is the medical equivalent of a listing "if it is

at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R.

§ 416.926(a).  Medical equivalence can be found where the child has an impairment included in

the listings, but "do[es] not exhibit one or more of the findings specified" for the particular

listing examined, or "one or more of the findings is not as severe as specified," yet there are

"other findings related to [the] impairment that are at least of equal medical significance to the

required criteria."  20 C.F.R. § 416.926(b)(1)(i)-(ii).  Last, if the impairment neither meets nor

medically equals any listing, there must be a determination of "whether it results in limitations

that functionally equal the listings."  20 C.F.R. § 416.926a(a).

   For an impairment to be the functional equivalent of a listing, it must be of listing-level

severity because it results in either marked[5] limitations in two domains of functioning or an

---

[4]   An impairment cannot meet one of the listings merely on the basis of a diagnosis, there must
be "a medically determinable impairment(s) that satisfies all of the criteria."  20 C.F.R. §
416.925(d).

[5]   There is a "marked" limitation in a domain where the impairment(s) interferes seriously with
the child's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. §
416.926a(e)(2)(i).  "It is the equivalent of the functioning [the Commissioner] would expect
to find on standardized testing with scores that are at least two, but less than three, standard
deviations below the mean."  *Id.*  The regulations further state:

   If you are a child of any age (birth to the attainment of age 18), we will find

   that you have a "marked" limitation when you have a valid score that is two
   standard deviations or more below the mean, but less than three standard
   deviations, on a comprehensive standardized test designed to measure ability
   or functioning in that domain, and your day-to-day functioning in domain-
   related activities is consistent with that score.

20 C.F.R. § 416.926a(e)(2)(iii).

extreme[6] limitation in one domain.  20 C.F.R. § 416.926a(a).  In assessing functional limitations, the ALJ considers all relevant factors outlined in 20 C.F.R. §§ 416.924a, 416.924b, and 416.929, including (1) how well the child initiates and sustains activities, whether he needs extra help, "and the effects of structured or supportive settings"; (2) how the child functions in school; and (3) how the child is affected by medications or  treatments.  20 C.F.R. § 416.926a(a)(1)-(3).  The ALJ examines whether the child functions "appropriately, effectively, and independently" in six domains, *i.e.*, "broad areas of functioning intended to capture all of what a child can or cannot do," compared with the abilities of other unimpaired children the same age.  20 C.F.R. § 416.926a(b)(1).  The six domains are "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being."  20 C.F.R. § 416.926a(b)(1)(i)-(vi).

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id.*  The court's review is based on the record taken as a whole, and the

---

[6]       There is an "extreme" limitation in a domain  where the "impairment(s) interferes *very* seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i)(emphasis added).  "Extreme" refers to the worst limitations, but "does not necessarily mean a total lack or loss of ability to function."  *Id*.   "Extreme" represents the equivalent of functioning shown by a valid score at least "three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score." 20 C.F.R. § 416.926a(e)(3)(iii).

court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id., quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  The court "may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner. *Hamlin,* 365 F.3d at 1214 (quotation omitted).

## Decision of the Administrative Law Judge

The ALJ found that Claimant was at all times a school-age child.  (R. 18).  At Step One, the ALJ found that Claimant had not engaged in substantial gainful activity.  *Id.*  At Step Two, the ALJ found that Claimant's ADHD and his learning disability were severe impairments.  *Id.* At Step Three, the ALJ found that Claimant's severe impairments did not meet a listing or medically equal the criteria of any listing.  *Id.*

The ALJ then evaluated the six domains set forth in 20 C.F.R. § 416.926a(b)(1)(i)-(vi) to analyze whether Claimant's severe impairments were functionally equivalent to a listing.  He found that Claimant had a less than marked limitation in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for himself.  (R. 20-24).  The ALJ found that Claimant had no limitation in the domains of moving about and manipulating objects and health and physical well being.  (R. 23-25).  Because he determined that Claimant had neither an "extreme" limitation in one domain of functioning nor a "marked" limitation in two domains, the ALJ found that Claimant was not disabled since the October 19, 2009 filing date.  (R. 25).

**Review**

Claimant asserts several arguments in attempting to reverse the decision of the ALJ. The Court finds persuasive the argument that the ALJ erred in wholly rejecting the opinion evidence of Aafedt solely because she was an "other source." The Court therefore reverses and remands for further proceedings.

Both parties agree that the Social Security Administration explained how ALJs should consider opinions from medical sources who are not "acceptable medical sources," such as physician assistants, in Social Security Ruling 06-03p, 2006 WL 2329939. The Ruling explains:

> Information from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

SSR 06-03p, 2006 WL 2329939, *2. Noting that "not every factor for weighing opinion evidence will apply in every case," SSR 06-03p, nonetheless, provides the following factors for the ALJ's consideration:

> • How long the source has known and how frequently the source has seen the individual;
> • How consistent the opinion is with other evidence;
> • The degree to which the source presents relevant evidence to support an opinion;
> • How well the source explains the opinion;
> • Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
> • Any other factors that tend to support or refute the opinion.

*Id*. at *5. Indeed, after applying these factors, the opinion of a medical source who is not "an acceptable medical source" may even outweigh that of a treating source:

> For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

13

*Id*.  And the ALJ should explain the weight given to these opinions in his decision for subsequent review:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Id*. at 6.

In Claimant's case, the ALJ first summarized Payne's testimony at the hearing.  (R. 19).  He then summarized the "objective evidence."  (R. 19-20).  In this section of his decision, the ALJ included the evidence of Dr. McGraw, Claimant's teachers, the form completed by Dr. Goodrich, and the evidence of Gilbert R. Parks, M.D.[7]  *Id*.  The ALJ did not include a summary of the form that Aafedt completed in September 2010 that gave her opinions regarding Claimant's limitations in the six domains that were part of the ALJ's analysis.  *Id*.

The ALJ then gave his analysis of each of the six functional equivalence domains.  For the second domain, attending and completing tasks, after the ALJ gave a legal summary, he then gave references to Dr. Goodrich's opinion evidence and statements by Dr. McGraw in support of his conclusion that Claimant had a less than marked limitation.  He then stated:

> No weight is given the "marked" limitation on attending and completing tasks given at Exhibit 12F.  The evaluator in that document is a physician assistant, a non-acceptable medical source.

---

[7]    The ALJ refers to page 5 of Exhibit 13F as a May 12, 2010 report from Gilbert R. Parks, M.D.  (R. 20).  This page, however, clearly states that the provider is Sarah D. Aafedt PA-C.  (R. 294).  The characterization of this page as a "report" is curious, because it is clear that this was a record of a 15-minute treatment session of Aafedt with Claimant.  *Id*.  The treatment record does reflect, however, the statements that the ALJ makes in this portion of his decision.  *Id*.

(R. 22).  The ALJ made the same statement at the end of his discussion of the third domain, interacting and relating with others.  (R. 23).  Exhibit 12F was the form that Aafedt completed that gave her opinion regarding the domains.  (R. 287-89).

Those two statements were the only references the ALJ made to the opinion evidence that Aafedt gave in the form she completed, and the quoted language makes clear that the only reason why he gave Aafedt's opinion no weight is because she was an "other source" rather than an "acceptable medical source."  The ALJ's failure to give any other reason violates the rules of the Social Security Administration as set forth in SSR 06-3p.  The Tenth Circuit has made clear that an ALJ must give reasons other than that a source is an "other source" to explain the weight that the ALJ gives the opinion.  *See, e.g. Carpenter v. Astrue*, 537 F.3d 1264, 1267-68 (10th Cir. 2008) ("The ALJ was not entitled to disregard the 'serious problems' set out in Dr. Ungerland's opinion simply because he is a chiropractor."); *Martinez v. Astrue*, 422 Fed. Appx. 719, 726-27 (10th Cir. 2011) (unpublished) (reversed in part so that the ALJ could use the relevant factors to analyze evidence from "other source"); *Mounts v. Astrue*, 479 Fed. Appx. 860, 865-66 (10th Cir. 2012) (unpublished) (rejecting claimant's argument that other source opinion had been rejected solely because source was not a physician); *Miller v. Astrue*, 2012 WL 4076128 *3 (10th Cir.) (unpublished) (ALJ had sufficiently explained weight given other source opinion, which "was not based solely on her status as a counselor").

Here, the ALJ's rejection of Aafedt's opinion was based solely on her status as a physician assistant.  His failure to give any description of her opinion evidence and his failure to give any reason other than her status to explain his rejection of her evidence are errors that require reversal.

Because the errors of the ALJ related to the opinion evidence require reversal, the undersigned does not address the remaining contentions of Payne.  On remand, the Commissioner should ensure that any new decision sufficiently addresses all issues raised by Payne.

This Court takes no position on the merits of Claimant's disability claim, and "[no] particular result" is ordered on remand.  *Thompson v. Sullivan*, 987 F.2d 1482, 1492-93 (10th Cir. 1993).  This case is remanded only to assure that the correct legal standards are invoked in reaching a decision based on the facts of the case.  *Angel v. Barnhart*, 329 F.3d 1208, 1213-14 (10th Cir. 2003), *citing Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).

## Conclusion

Based upon the foregoing, the Court **REVERSES AND REMANDS** the decision of the Commissioner denying disability benefits to Claimant for further proceedings consistent with this Order.

Dated this 8th day of February 2013.


Paul J. Cleary
United States Magistrate Judge

16